IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRINK'S GLOBAL SERVICES USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EFSTATHIOS A. REGOPOULOS, individually; EVAN E. REGOPOULOS, individually and as trustee of the Evan E Regopoulos 2006 Living Trust; and MARIA N. REGOPOULOS, individually and as trustee of the Evan E Regopoulos 2006 Living Trust, <br><br> Defendants. | Case No.: <br><br> **TRIAL BY JURY DEMANDED** |

## COMPLAINT

Plaintiff, Brink's Global Services USA, Inc. ("Brink's"), for its Complaint against Defendants Efstathios ("Steve") A. Regopoulos, Evan E. Regopoulos, both individually and as Trustee of the Evan E. Regopoulos 2006 Living Trust, and Maria N. Regopoulos, both individually and as Trustee of the Evan E. Regopoulos 2006 Living Trust, states as follows:

### NATURE OF THE CASE

1. This is an action to recover approximately $300,000[1] worth of gold and silver bars stolen by Defendants. In 2014, an account statement for an account Defendants held with Brink's inadvertently identified several gold and silver bars, which did not belong to Defendants, as being held in Defendants' account at Brinks. Seeing an opportunity to profit, Defendants moved quickly and intentionally to withdraw those gold and silver bars from the account and

---

[1] As of August 14, 2017, the value of the gold and silver bars was $288,136.79. This value fluctuates on a daily basis based on gold and silver prices.

transfer them to a secure vault elsewhere—all the while concealing the fact that these bars did not belong to Defendants and falsely representing to Brink's that Defendants were the legal owners of the bars. In withdrawing and transferring these bars, Defendants effectively stole precious metals with a value of approximately $300,000 from Brink's. In early-2017, Brink's discovered that the bars were missing. Brink's immediately contacted Defendants to return the bars or otherwise compensate Brink's for their improper removal of the same. Although not disputing that they did not own and have never owned the bars, Defendants have refused to return them to Brink's.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Brink's is a corporation organized under the laws of the State of Delaware with its principal place of business located at 580 5th Avenue, New York, New York 10036.

3. Upon information and belief, Defendant Steve Regopoulos is a citizen of the State of Illinois, residing at 920 Livingston Lane, Barrington, IL 60010.

4. Upon Information and belief, Defendant Evan Regopoulos is a citizen of the State of Illinois, residing at 122 Willowbrook Court, Unit 9, Schaumburg, IL 60195.

5. Upon information and belief, Defendant Maria Regopoulos is a citizen of the State of Illinois, residing at 122 Willowbrook Court, Unit 9, Schaumburg, IL 60195.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the defendants reside in that geographical area which is contained within the federal judicial district known as the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

8. Brink's is the industry leader in risk management and secure logistics. Part of Brink's business includes the storage and safeguarding of valuables, including gold, silver, and other precious metals.

9. On or about July 18, 2009, Defendants Evan Regopoulos and Maria Regopoulos, as trustees of the Evan E Regopoulos 2006 Living Trust (the "Trust") completed an Account Application, and thereby entered into an agreement (the "Agreement") with Brink's to open a precious metals storage account (the "Account"). Pursuant to the Agreement, Brink's agreed to maintain and store an inventory of precious metals on behalf of the Trust in a vault at a Brink's facility. A true and correct copy of the Account Application and the Terms and Conditions of the Account are attached hereto and incorporated herein as Exhibit A and Exhibit B, respectively.

10. Thereafter, the trustees of the Trust deposited silver bars into their Account. On September 23, 2009, the first silver bar was deposited into the Account. Four more silver bars were deposited into the Account on September 25, 2012. On April 18, 2014, another four silver bars were deposited into the Account.

11. As of April 18, 2014, the Account held nine (9) silver bars.

12. Silver and gold bars are marked and identified by serial number, gross weight, fineness or purity, and refiner or manufacturer. A bar list is included with any shipment of gold or silver bars to a Brink's facility. When gold or silver bars arrive at Brink's facility for deposit

into a Brink's account, Brink's physically inspects and verifies the bars to confirm they match the bars identified on the bar list.

13. Brink's maintains records of the contents of all of its precious metals storage accounts and all transfers into and from each precious metals storage account.

14. Brink's sends its precious metals storage account holders a monthly Inventory Report of their account detailing the precious metals held by the account holder, including the Item Number, the Refiner, Gross Weight, and Assay of each bar of gold or silver.

15. As of April 30, 2014—less than two (2) weeks after the final four bars had been deposited into the Account—the Account's Inventory Report indicated that the Account held nine (9) 1,000 ounce silver bars, each identified by a different Item Number and also identified by Refiner, Gross Weight, and Assay. See Exhibit C.

16. On or about May 13, 2014, the Account's Inventory Report erroneously indicated that the Account consisted of eighteen (18) 1,000 ounce silver bars and one (1) gold bar. See Exhibit D.

17. No transfers to or from the account were initiated between April 30, 2014 and May 13, 2014. Rather, the nine (9) additional silver bars and one (1) additional gold bar (the "Additional Bars") were inadvertently placed into the Account due to an internal error with Brink's inventory software system.

18. Recognizing that the Account had erroneously received the Additional Bars— which were valued at approximately $300,000—Defendants saw an opportunity to profit.

19. During the week of June 9, 2014, Defendant Steve Regopoulos, acting with both actual and apparent authority on behalf of the Trust, contacted Brink's by phone to obtain a

quote to transfer all of the precious metals in the Account—including the Additional Bars—to a vault at J.P Morgan Chase in Manhattan, New York.

20. On or about June 14, 2014, Defendant Steve Regopoulos, acting with both actual and apparent authority on behalf of the Trust, sent Brink's a written request to withdraw all of the precious metals in the Account—including the Additional Bars. The request was signed by Defendant Evan Regopoulos and requested the bars be transferred to the same J.P. Morgan Chase vault in Manhattan, New York. See Exhibit E.

21. At the time of the phone call and withdrawal request, Defendants knew of the Additional Bars in the Account. In fact, on April 30, 2014 and May 14, 2014, Brink's had forwarded copies of the respective Account Inventory Reports by email to Defendant Steve Regopoulos.

22. Defendants also knew the Additional Bars did not belong to the Trust or any of the Defendants. Defendants knew that in the two weeks between the April 30, 2014 and May 14, 2014 account statements neither they, nor anyone on their behalf, had initiated a transfer of any precious metals into the Account.

23. Despite this knowledge, Defendants surreptitiously concealed the fact that the Trust did not own the Additional Bars, and just one month after gaining knowledge that Account had substantially grown, requested withdrawal of the Additional Bars and transfer to a secure location beyond the reach of Brink's.

24. Pursuant to this request, and without knowledge that the Account's Inventory Report mistakenly included the Additional Bars, Brink's transferred the precious metals in the Account—including the Additional Bars—to the J.P. Morgan Chase vault. Upon information and belief, the bars remain there today.

25. In January 2017, Brink's was notified by customer John Doe that his precious metals account with Brink's was missing nine (9) silver bars and one (1) gold bar. It was then determined that the Additional Bars that had been inadvertently placed in the Account were, in fact, John Doe's bars. This was the first time Brink's became aware of the error.

26. Brink's reached an agreement with John Doe related to the erroneous removal of the Additional Bars from John Doe's account in exchange for a release and assignment/transfer of John Doe's rights, title, and interest to the Additional Bars and John Doe's claims, rights of claim, or rights of action related to the Additional Bars.

27. Brink's has attempted to recover the Additional Bars from Defendants and have correspondence with Defendant Steve Regopoulos and his counsel concerning the return of the Additional Bars. Defendant Steve Regopoulos has not disputed that the Additional Bars are not owned by the Trust or Defendants, but he has refused to return or otherwise compensate Brink's for the removal and Brink's loss of the Additional Bars.

## COUNT I – BREACH OF CONTRACT

28. Brink's restates and incorporates the allegations contained in paragraphs 1 through 27 as if fully stated herein.

29. Pursuant to the Agreement, Brink's agreed to maintain the Account on behalf of the Trust at a Brink's facility in exchange for payment from the Trust for Brink's services and storage of precious metals.

30. Brink's performed its duties under the Agreement.

31. In further consideration thereof, and as material inducement to enter the Agreement, the Agreement between the parties contained binding terms and conditions.

32. The terms and conditions provided that the Trust "shall never conceal or misrepresent any material fact or circumstance concerning the Precious Metals delivered to Brink's." See Ex. B, ¶ 5.

33. Pursuant to the terms and conditions, the Trust "represent[ed] and warrant[ed] that all Precious metals held in storage under this Agreement shall be the sole unencumbered property of [the Trust]." See Ex. B., ¶ 8.

34. Defendants Evan Regopoulos and Maria Regopoulos, as trustees, breached the Agreement by authorizing the withdrawal of the Additional Bars with knowledge that the Trust was not legally entitled to the same. Specifically, by requesting withdrawal of the Additional Bars in June 2014, Defendants Evan Regopoulos and Maria Regopoulos breached the Agreement by concealing their knowledge that the Additional Bars did not rightfully belong to the Trust and misrepresented that the Trust was the owner of the same.

35. Brink's has requested return of the Additional Bars, but Defendants have ignored Brink's request.

36. This breach of contract has caused Brink's damages of approximately $300,000.

FOR RELIEF, Brink's prays for judgment against Defendants on Count I for a fair and reasonable amount caused by Defendants' breach of contract, to include the value of the Additional Bars, and any other damages related to Defendants' breach of contract.

## COUNT II - CONVERSION

37. Brink's restates and incorporates the allegations contained in paragraphs 1 through 36 as if fully stated herein.

38. Brink's, as assignee and owner of the Additional Bars, has a right to the Additional Bars.

39. Brink's, as assignee and owner of the Additional Bars, has an absolute and unconditional right to the immediate possession of the same.

40. Upon discovering that the Additional Bars had been erroneously placed in the Account and intentionally transferred by Defendants to the vault at J.P. Morgan Chase in Manhattan, Brink's made numerous written demands to Defendant Steven Regopoulos —from January through April of 2017—for return of the Additional Bars, as Steve was the individual who requested the withdrawal of the Additional Bars as the apparent agent of Defendants Evan Regopoulos and Maria Regopoulos.

41. Despite these demands, Defendants have wrongfully and intentionally continued to hold and store the Additional Bars and, without authorization, assumed control and dominion over the same and converted the Additional Bars to their own use.

42. Brink's is entitled to damages for the conversion of the Additional Bars, including but not limited to, the market value of the Additional Bars at the time and place of conversion, depreciation in value if the Additional Bars are returned, and interest as allowed by law.

FOR RELIEF, Brink's prays for judgment against Defendants on Count II, including the fair market value of the Additional Bars at the time of conversion, depreciation in value if the Additional Bars are returned, and interest as allowed by law.

## COUNT III - FRAUD

43. Brink's restates and incorporates the allegations contained in paragraphs 1 through 42 as if fully stated herein.

44. During the week of June 9, 2014, Defendant Steve Regopoulos called Brink's to obtain a quote to transfer the precious metals in the Account—including the Additional Bars that had been erroneously placed in the Account only one month earlier—to J.P. Morgan Chase in

Manhattan. During this call, Defendant Steve Regopoulos represented to Brink's that he had the right to withdraw and transfer the Additional Bars and that the Trust owned the Additional Bars.

45. On or about June 14, 2014, Defendant Steve Regopoulos sent an email to Brink's, which attached a written request signed by Defendant Evan Regopoulos to withdraw and transfer the precious metals in the Account, including the Additional Bars that had been erroneously placed in the Account only one month earlier. Defendant Steve Regopoulos also attached to the email the erroneous account statement of May 13, 2014, which for the first time included the Additional Bars. By requesting withdrawal and transfer of the Additional Bars, Defendants falsely represented that the Trust was the owner of the same.

46. At the time of the phone call and written request, Defendants Steve Regopoulos and Evan Regopoulos knew that the Additional Bars in the Account did not legally belong to the Trust and knew that their representations that the Additional Bars belonged to the Trust were false.

47. In fact, Defendants had received account statements from Brink's by email on April 30, 2014 and May 13, 2014. Defendants knew that in the two weeks between April 30, 2014 and May 14, 2014, they had not initiated a transfer of any precious metals to the Account. Defendants, therefore, knew the Additional Bars reflected in the Account could not have belonged to the Trust.

48. Despite this knowledge, Defendants affirmatively and falsely represented to Brink's, in both oral and written communications, that the Trust was the owner of the Additional Bars to induce Brink's to permit Defendants to withdraw and transfer the same to a vault at J.P. Morgan Chase in Manhattan, New York.

49. Unaware at this time of any error reflected in its inventory software system, Brink's justifiably relied on the representations by Defendants that the bars in the Account were owned by Defendants when determining to process the withdrawal and transfer request.

50. As a result of these misrepresentations, Brink's withdrew and transferred the entire contents of the Account, including the Additional Bars, to J.P. Morgan Chase in Manhattan, New York and has suffered damaged in the amount of approximately $300,000.

FOR RELIEF, Brink's prays for judgment against Defendants on Count III, and for fair and reasonable damages of at least $300,000 resulting from Defendants fraudulent misrepresentations and resulting loss of the Additional Bars.

## COUNT IV – REPLEVIN

51. Brink's restates and incorporates the allegations contained in paragraphs 1 through 50 as if fully stated herein.

52. Brink's, as assignee of John Doe and owner of the Additional Bars, is entitled to lawful possession of the same.

53. Defendants wrongfully procured the Additional Bars by fraud, artifice, or otherwise, and have wrongfully detained the Additional Bars, holding them, upon information and belief, in a secure vault at J.P. Morgan Chase in Manhattan, New York.

54. The Additional Bars have not been taken by Defendants for any tax, assessment, or fine levied by virtue of any law or seized under any execution of attachment.

55. Upon discovering that the Additional Bars had been erroneously placed in the Account and intentionally transferred by Defendants to the vault at J.P. Morgan Chase in Manhattan, Brink's made numerous written demands for return of the Additional Bars to Defendant Steven Regopoulos from January through April of 2017.

56. Despite these demands, Defendants continue to wrongfully possess the Additional Bars.

FOR RELIEF, Brink's respectfully requests an order and judgment of replevin should be entered in favor of Brink's with respect to the Additional Bars. Brink's respectfully request this Court to grant the following relief:

a) Immediate possession of the Additional Bars;

b) Damages equal to the value of any bars not delivered to Brink's; and

c) Such other and further relief as the Court deems just and proper.

## COUNT V – IN THE ALTERNATIVE– UNJUST ENRICHMENT

57. Brink's restates and incorporates the allegations contained in paragraphs 1 through 56 as if fully stated herein.

58. By holding the Additional Bars, Defendants have retained a benefit—the value of which is approximately $300,000—to the detriment of Brink's, the rightful owner of the Additional Bars.

59. Defendants' knowingly concealed that the Additional Bars did not belong to them and represented to Brink's that the Additional Bars were theirs, effectively stealing them and securing them in a secure vault. Defendants' retention of the Additional Bars, value, and benefit that comes therewith violates the fundamental principles of justice, equity, and good conscience.

FOR RELIEF, Brink's respectfully request judgment against Defendants in an amount of at least $300,000 and that Defendants be ordered to return the Additional Bars or otherwise compensate Brink's for the loss of the same and to disgorge any unjust enrichment or benefit obtained from the wrongful withdrawal, removal, and conversion of the Additional Bars.

- 12 -

Respectfully submitted,

BRINKS GLOBAL SERVICES USA, INC.,


/s/  Emily L. Peel
Edward A. Cohen, 6194012
J. David Duffy, 6242374
Emily L. Peel, 6290433
55 E. Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
(312) 580-2201 – FAX
ecohen@thompsoncoburn.com
dduffy@thompsoncoburn.com
epeel@thompsoncoburn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRINK'S GLOBAL SERVICES USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EFSTATHIOS A. REGOPOULOS, individually; EVAN E. REGOPOULOS, individually and as trustee of the Evan E Regopoulos 2006 Living Trust; and MARIA N. REGOPOULOS, individually and as trustee of the Evan E Regopoulos 2006 Living Trust, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No.: <br> ) <br> ) <br> ) <br> ) <br> ) **TRIAL BY JURY DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) |

## JURY DEMAND

Brink's Global Services USA, Inc., demands a trial by jury.

Respectfully submitted,

BRINKS GLOBAL SERVICES USA, INC.,

/s/ Emily L. Peel
Edward A. Cohen, 6194012
J. David Duffy, 6242374
Emily L. Peel, 6290433
55 E. Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
(312) 580-2201 – FAX
ecohen@thompsoncoburn.com
dduffy@thompsoncoburn.com
epeel@thompsoncoburn.com